UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
Case No. _____

| | |
|---|---|
| ABDULLA MONTHER, LARRY WELCH, CHRIS WILLIAMS, and other similarly situated individuals, | ) ) ) ) |
| Plaintiff(s), | ) ) |
| v. | ) ) |
| FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc.; M. & T. FOOD STORES, INC.; FAMILY FOOD OF HOMESTEAD, INC.; and YOUSSEF YAZJI, | ) ) ) ) ) |
| Defendants. | ) ) |

## COMPLAINT
### (OPT-IN PURSUANT TO 29 U.S.C § 216(B))

Plaintiffs, ABDULLA MONTHER, LARRY WELCH, CHRIS WILLIAMS (collectively "Plaintiffs") and other similarly situated individuals, sue the Defendants, FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc.; M. & T. FOOD STORES, INC.; FAMILY FOOD OF HOMESTEAD, INC. and YOUSSEF YAZJI (collectively the "Defendants"), and allege:

### JURISDICTION

1.      This is an action to recover money damages for unpaid minimum and overtime wages under the laws of the United States. This is also an action for breach of contract under Florida common law.



www.saenzanderson.com

1

2.     This Court has jurisdiction pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201-219 (Section 216 for jurisdictional placement) ("the Act"). Furthermore, this Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so related to claims in the action within the original jurisdiction of this district Court that they form part of the same case or controversy under Article III of the United States Constitution. Resolving the federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

## VENUE

3.     Plaintiffs are residents of Miami-Dade County, Florida, within the jurisdiction of this Honorable Court.  Plaintiffs are covered employees for purposes of the Act.

4.     FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc.; M. & T. FOOD STORES, INC.; and FAMILY FOOD OF HOMESTEAD, INC. (collectively the "Corporate Defendants") and YOUSSEF YAZJI (the "Individual Defendant"), are Florida Profit Corporations and a Florida resident, respectively, having their main place of business in Miami-Dade County, Florida, where Plaintiffs worked for Defendants, and at all times material hereto were and are engaged in interstate commerce. The Individual Defendant, upon information and belief, resides in Miami-Dade, Florida.

## JOINT EMPLOYMENT

5.     Corporate Defendants are enterprises owned and controlled by the Individual Defendant.

6.     Corporate Defendants are under the administration and common control of the Individual Defendant.



www.saenzanderson.com

7.      Corporate Defendants are entities engaged in related activities, which perform through a unified operation, with a common ownership, with a common business purpose, under the common control and administration of the Individual Defendant.

8.      Corporate Defendants share offices and employees.

9.      Corporate Defendants share common ownership, common management, centralized control of labor relations, and common offices and interrelated operations. Corporate Defendants are an integrated enterprise.  Alternatively, each company is a covered enterprise under the Act.

10.      Corporate Defendants share employees or interchange employees; work in the direct interest of one another; and their employees are in the common control of all of the Corporate Defendants. As such, Corporate Defendants are joint employers or an agent of each other. Alternatively, each company is a covered enterprise under the Act.

11.      The Individual Defendant is an officer and owner of Corporate Defendants. In his capacity as agent, officer, and high-ranking manager of Corporate Defendants, the Individual Defendant ordered, directed the Plaintiffs on what specific work to complete.

### COUNT I: WAGE AND HOUR VIOLATION BY THE CORPORATE DEFENDANTS (ABDULLA MONTHER)

12.      Plaintiff ABDULLA MONTHER ("Monther") re-adopts each and every factual allegation as stated in paragraphs 1-11 above as if set out in full herein.

13.      This action is brought by Monther and those similarly situated to recover from the Corporate Defendants, jointly, unpaid minimum wages and overtime compensation, as well as an



www.saenzanderson.com

3

additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq.

14.    Section 207(a)(1) of the Act provides that, "No employer shall employ any of his employees . . . for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

15.    29 U.S.C. § 206 (a) (1) states "... an employer must pay a minimum wage of $5.15/hr to an employee who is engaged in commerce..." [29 U.S.C. § 206 (a) (1)]". On July 24, 2007, the Federal minimum wage was raised to $5.85/hr. On July 24, 2008, Federal minimum wage was raised to $6.55/hr. On July 24, 2009, the Federal minimum wage was raised to $7.25/hr.

16.    The Act provides minimum standards that may be exceeded but cannot be waived or reduced.  Employers must comply, for example, with any Federal, State, or municipal laws, regulations or ordinances establishing a higher minimum wage or lower maximum workweek than those established under the Act. 29 C.F.R. § 541.4.

17.    In Florida, the minimum wage for the relevant time period was as follows:

2018 = $8.25 per hour

2019 = $8.46 per hour

2020 = $8.56 per hour

2021 = $8.65 per hour (January 1, 2021, through September 29, 2021)

2021 = $10.00 per hour (September 30, 2021 through December 31, 2021)

2022 = $10.00 per hour



18.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). The Corporate Defendants are and, at all times pertinent to this Complaint, were engaged in interstate commerce. At all times pertinent to this Complaint, the Corporate Defendants operated as organizations which sell and/or market their services and/or goods to customers from throughout the United States and also provide their services for goods sold and transported from across state lines of other states, and the Corporate Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use telephonic transmissions going over state lines to do its business, transmit funds outside the State of Florida, and otherwise regularly engage in interstate commerce, particularly with respect to their employees.

19.     Upon information and belief, the combined annual gross revenue of the Corporate Defendants was at all times material hereto in excess of $500,000 per annum, and/or Plaintiffs and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

20.     By reason of the foregoing, the Corporate Defendants are and were, during all times hereafter mentioned, enterprises engaged in commerce or in the production of goods for commerce as defined in §§ 203(r) and 203(s) of the Act and/or Monther and those similarly situated were and/or are engaged in interstate commerce for the Corporate Defendants. The Corporate Defendants' business activities involve those to which the Act applies.

21.     The Corporate Defendants are convenience stores/food markets, and, through their business activities, affect interstate commerce. Monther's work for the Corporate Defendants likewise affects interstate commerce. Monther was employed by the Corporate Defendants as a cashier and helper for the Corporate Defendants.



www.saenzanderson.com

5

22.     While employed by the Corporate Defendants, Monther worked approximately an average of 91 hours per week without being compensated at the rate of not less than one- and one-half times the regular rate at which he was employed. Monther was employed as a cashier and helper, performing the same or similar duties as that of those other similarly situated cashiers and helpers whom Monther observed working in excess of 40 hours per week without overtime compensation.

23.     Monther worked for the Corporate Defendants from approximately 2018 through February of 2022. In between, Monther did not work for the Corporate Defendants for a 9-month period. Monther does not claim unpaid wages for this 9-month period.

24.     In total, Monther worked approximately 76 compensable weeks for the Corporate Defendants under the Act, or 76 compensable weeks if we count 3 years preceding the date of the filing of the instant action.

25.     The Corporate Defendants agreed to pay Monther $15 per hour.

26.     However, the Corporate Defendants did not pay Monther for all of his hours worked and did not pay Monther at the lawful overtime rate for hours worked in excess of 40 per week.

27.     At best, Corporate Defendants paid Monther very irregularly. Corporate Defendants paid Monther some weeks and other weeks they did not pay Monther using the excuse that they "were going to pay later." In all, Corporate Defendants paid Monther close to $3,000 per month on average. These calculations are subject to discovery and are made based on Monther's best efforts to calculate moneys owed to him due to the irregularity in which he received payments from the Corporate Defendants.



www.saenzanderson.com

28.     Monther seeks to recover unpaid overtime and minimum wages accumulated from the date of hire and/or from 3 (three) years preceding the date of the filing of this Complaint.

29.     Prior to the completion of discovery and to the best of Monther's knowledge, at the time of the filing of this Complaint, Monther's good faith estimate of unpaid overtime and minimum wages is as follows:

### UNPAID OVERTIME WAGES

| Year | Formula | Actual Damages | Liquidated Damages | Total Damages |
|------|---------|----------------|--------------------|---------------|
| 2020 | $15 x .5 x 51 x 17 | $6,502.50 | $6,502.50 | $13,005 |
| 2021 | $15 x .5 x 51 x 52 | $19,890 | $19,890 | $39,780 |
| 2022 | $15 x .5 x 51 x 7 | $2,677.50 | $2,677.50 | $5,355 |
|      |         |                | **Total** | $58,140 plus reasonable attorney's fees and costs of suit. |

### UNPAID MINIMUM WAGES

| Year | Formula | Actual Damages | Liquidated Damages | Total Damages |
|------|---------|----------------|--------------------|---------------|
| 2020 | $8.56 x 91 x 17 = $13,242.32 (what should have been paid) <br><br> $3,000/4 = $750 x 17 = $12,750 (subject to discovery, what may have been paid) | $492.32 | $492.32 | $984.64 |
| 2021 (1/1/21–9/29/21) | $8.65 x 91 x 38 = $29,911.70 (what should have been paid) <br><br> $3,000/4 = $750 x 38 = $28,500 (subject to discovery, what may have been paid) | $1,411.70 | $1,411.70 | $2,823.40 |
| 2021 (9/30/21–12/31/21) | $10 x 91 x 13 = $11,830.00 (what should have been paid) | $2,080.00 | $2,080.00 | $4,160.00 |



| | | | | |
|---|---|---|---|---|
| | $3,000/4 = $750 x 13 = $9,750.00 (subject to discovery, what may have been paid) | | | |
| 2022 | $10 x 91 x 7 = $6,370 (what should have been paid)<br><br>$3,000/4 = $750 x 7 = $5,250 (subject to discovery, what may have been paid) | $1,120.00 | $1,120.00 | $2,240.00 |
| | | | **Total** | $10,208.04, plus reasonable attorney's fees and costs of suit. |

30.     At all times material hereto, the Corporate Defendants failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Monther and those similarly situated performed services and worked in excess of the maximum hours provided by the Act but no provision was made by the Corporate Defendants to properly pay them at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek as provided in the Act. The additional persons who may become Plaintiffs in this action are weekly-paid employees and/or former employees of the Corporate Defendants who are and who were subject to the unlawful payroll practices and procedures of the Corporate Defendants and were not paid minimum wages, or time and one half of their regular rate of pay for all overtime hours worked in excess of forty.

31.     The Corporate Defendants knew and/or showed reckless disregard for the provisions of the Act concerning the payment of minimum and overtime wages and remain owing Monther and those similarly situated these overtime and minimum wages since the commencement of Monther's and those similarly situated employees' employment with the Corporate Defendants



as set forth above, and Monther and those similarly situated are entitled to recover double damages. Corporate Defendants never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

32.     Corporate Defendants willfully and intentionally refused to pay Monther overtime and minimum wages as required by the laws of the United States as set forth above and remain owing Monther these overtime and minimum wages since the commencement of Monther's employment with the Corporate Defendants as set forth above.

33.     Monther has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Monther and those similarly situated request that this Honorable Court:

A.  Enter judgment for Monther and other similarly situated and against the Corporate Defendants on the basis of the Corporate Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.  Award Monther actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

C.  Award Monther an equal amount in double damages/liquidated damages; and

D.  Award Monther reasonable attorneys' fees and costs of suit; and

E.  Grant such other and further relief as this Court deems equitable and just.

### **COUNT II: WAGE AND HOUR VIOLATION BY THE CORPORATE DEFENDANTS (LARRY WELCH)**



www.saenzanderson.com

9

34.     Plaintiff LARRY WELCH ("Welch") re-adopts each and every factual allegation as stated in paragraphs 1-11 above as if set out in full herein.

35.     This action is brought by Welch and those similarly situated to recover from the Corporate Defendants, jointly, unpaid minimum wages and overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq.

36.     Section 207(a)(1) of the Act provides that, "No employer shall employ any of his employees . . . for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

37.     29 U.S.C. § 206 (a) (1) states "... an employer must pay a minimum wage of $5.15/hr to an employee who is engaged in commerce..." [29 U.S.C. § 206 (a) (1)]". On July 24, 2007, the Federal minimum wage was raised to $5.85/hr. On July 24, 2008, Federal minimum wage was raised to $6.55/hr. On July 24, 2009, the Federal minimum wage was raised to $7.25/hr.

38.     The Act provides minimum standards that may be exceeded but cannot be waived or reduced.  Employers must comply, for example, with any Federal, State, or municipal laws, regulations or ordinances establishing a higher minimum wage or lower maximum workweek than those established under the Act. 29 C.F.R. § 541.4.

39.     In Florida, the minimum wage for the relevant time period was as follows:

2018 = $8.25 per hour

2019 = $8.46 per hour

2020 = $8.56 per hour



www.saenzanderson.com

10

2021 = $8.65 per hour (January 1, 2021, through September 29, 2021)

2021 = $10.00 per hour (September 30, 2021 through December 31, 2021)

2022 = $10.00 per hour

40.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). The Corporate Defendants are and, at all times pertinent to this Complaint, were engaged in interstate commerce. At all times pertinent to this Complaint, the Corporate Defendants operated as organizations which sell and/or market their services and/or goods to customers from throughout the United States and also provide their services for goods sold and transported from across state lines of other states, and the Corporate Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use telephonic transmissions going over state lines to do its business, transmit funds outside the State of Florida, and otherwise regularly engage in interstate commerce, particularly with respect to their employees.

41.     Upon information and belief, the combined annual gross revenue of the Corporate Defendants was at all times material hereto in excess of $500,000 per annum, and/or Welch and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

42.     By reason of the foregoing, the Corporate Defendants are and were, during all times hereafter mentioned, enterprises engaged in commerce or in the production of goods for commerce as defined in §§ 203(r) and 203(s) of the Act and/or Welch and those similarly situated were and/or are engaged in interstate commerce for the Corporate Defendants. The Corporate Defendants' business activities involve those to which the Act applies.



www.saenzanderson.com

43.     The Corporate Defendants are convenience stores/food markets, and, through their business activities, affect interstate commerce. Welch's work for the Corporate Defendants likewise affects interstate commerce. Welch was employed by the Corporate Defendants as a cashier and helper for the Corporate Defendants.

44.     While employed by the Corporate Defendants, Welch worked approximately an average of 91 hours per week without being compensated at the rate of not less than one- and one-half times the regular rate at which he was employed. Welch was employed as a cashier and helper, performing the same or similar duties as that of those other similarly situated cashiers and helpers whom Welch observed working in excess of 40 hours per week without overtime compensation.

45.     Welch worked for the Corporate Defendants from approximately April of 2019 through February of 2022.

46.     In total, Welch worked approximately 150 compensable weeks for the Corporate Defendants under the Act, or 150 compensable weeks if we count 3 years preceding the date of the filing of the instant action.

47.     The Corporate Defendants agreed to pay Welch $12 per hour.

48.     At best, Corporate Defendants paid Welch very irregularly. Corporate Defendants paid Welch some weeks and other weeks they did not pay Welch using the excuse that they "were going to pay later." In all, Corporate Defendants paid Welch close to $2,400 per month on average. These calculations are subject to discovery and are made based on Welch's best efforts to calculate moneys owed to him due to the irregularity in which he received payments from the Corporate Defendants.



49.     Welch seeks to recover unpaid overtime and minimum wages accumulated from the date of hire and/or from 3 (three) years preceding the date of the filing of this Complaint.

50.     Prior to the completion of discovery and to the best of Welch's knowledge, at the time of the filing of this Complaint, Welch's good faith estimate of unpaid overtime and minimum wages is as follows:

UNPAID OVERTIME WAGES

| Year | Formula | Actual Damages | Liquidated Damages | Total Damages |
|------|---------|----------------|--------------------|--------------| 
| 2019 | $12 x .5 x 51 x 38 | $11,628 | $11,628 | $23,256 |
| 2020 | $12 x .5 x 51 x 52 | $15,912 | $15,912 | $31,824 |
| 2021 | $12 x .5 x 51 x 52 | $15,912 | $15,912 | $31,824 |
| 2022 | $12 x .5 x 51 x 7 | $2,142 | $2,142 | $4,284 |
|      |         |                | Total | $91,188 plus reasonable attorney's fees and costs of suit. |

UNPAID MINIMUM WAGES

| Year | Formula | Actual Damages | Liquidated Damages | Total Damages |
|------|---------|----------------|--------------------|--------------| 
| 2019 | $8.46 x 91 x 39 = $30,024.54 (what should have been paid)  $2,400/4 = $600 x 39 = $23,400 (subject to discovery, what may have been paid) | $6,624.54 | $6,624.54 | $13,249.08 |
| 2020 | $8.56 x 91 x 52 = $40,505.92 (what should have been paid)  $2,400/4 = $600 x 52 = $31,200 (subject to discovery, what may have been paid) | $9,305.92 | $9,305.92 | $18,611.84 |



| 2021 (1/1/21– 9/29/21) | $8.65 x 91 x 38 = $29,911.70 (what should have been paid)<br><br>$2,400/4 = $600 x 38 = $22,800 (subject to discovery, what may have been paid) | $7,111.70 | $7,111.70 | $14,223.40 |
|---|---|---|---|---|
| 2021 (9/30/21– 12/31/21) | $10 x 91 x 13 = $11,830 (what should have been paid)<br><br>$2,400/4 = $600 x 13 = $7,800 (subject to discovery, what may have been paid) | $4,030 | $4,030 | $8,060 |
| 2022 | $10 x 91 x 7 = $6,370 (what should have been paid)<br><br>$2,400/4 = $600 x 7 = $4,200 (subject to discovery, what may have been paid) | $2,170 | $2,170 | $4,340 |
|  |  |  | **Total** | $58,484.32, plus reasonable attorney's fees and costs of suit. |

51.    At all times material hereto, the Corporate Defendants failed to comply with Title 29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Welch and those similarly situated performed services and worked in excess of the maximum hours provided by the Act but no provision was made by the Corporate Defendants to properly pay them at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek as provided in the Act. The additional persons who may become Plaintiffs in this action are weekly-paid employees and/or former employees of the Corporate Defendants who are and who were subject to the unlawful



payroll practices and procedures of the Corporate Defendants and were not paid minimum wages, or time and one half of their regular rate of pay for all overtime hours worked in excess of forty.

52.     The Corporate Defendants knew and/or showed reckless disregard for the provisions of the Act concerning the payment of minimum and overtime wages and remain owing Welch and those similarly situated these overtime and minimum wages since the commencement of Welch's and those similarly situated employees' employment with the Corporate Defendants as set forth above, and Welch and those similarly situated are entitled to recover double damages. Corporate Defendants never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

53.     Corporate Defendants willfully and intentionally refused to pay Welch overtime and minimum wages as required by the laws of the United States as set forth above and remain owing Welch these overtime and minimum wages since the commencement of Welch's employment with the Corporate Defendants as set forth above.

54.     Welch has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Welch and those similarly situated request that this Honorable Court:

A. Enter judgment for Welch and other similarly situated and against the Corporate Defendants on the basis of the Corporate Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Welch actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

C. Award Welch an equal amount in double damages/liquidated damages; and



www.saenzanderson.com

D.  Award Welch reasonable attorneys' fees and costs of suit; and

E.  Grant such other and further relief as this Court deems equitable and just.

## COUNT III: WAGE AND HOUR VIOLATION BY
## THE CORPORATE DEFENDANTS (CHRIS WILLIAMS)

55.     Plaintiff CHRIS WILLIAMS ("Williams") re-adopts each and every factual allegation as stated in paragraphs 1-11 above as if set out in full herein.

56.     This action is brought by Williams and those similarly situated to recover from the Corporate Defendants, jointly, unpaid minimum wages and overtime compensation, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 et seq.

57.     Section 207(a)(1) of the Act provides that, "No employer shall employ any of his employees . . . for a work week longer than 40 hours unless such employee receives compensation for his employment in excess of the hours above-specified at a rate not less than one and a half times the regular rate at which he is employed."

58.     29 U.S.C. § 206 (a) (1) states "... an employer must pay a minimum wage of $5.15/hr to an employee who is engaged in commerce..." [29 U.S.C. § 206 (a) (1)]". On July 24, 2007, the Federal minimum wage was raised to $5.85/hr. On July 24, 2008, Federal minimum wage was raised to $6.55/hr. On July 24, 2009, the Federal minimum wage was raised to $7.25/hr.

59.     The Act provides minimum standards that may be exceeded but cannot be waived or reduced.  Employers must comply, for example, with any Federal, State, or municipal laws, regulations or ordinances establishing a higher minimum wage or lower maximum workweek than those established under the Act. 29 C.F.R. § 541.4.



www.saenzanderson.com

60.     In Florida, the minimum wage for the relevant time period was as follows:

2018 = $8.25 per hour

2019 = $8.46 per hour

2020 = $8.56 per hour

2021 = $8.65 per hour (January 1, 2021, through September 29, 2021)

2021 = $10.00 per hour (September 30, 2021 through December 31, 2021)

2022 = $10.00 per hour

61.     Jurisdiction is conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). The Corporate Defendants are and, at all times pertinent to this Complaint, were engaged in interstate commerce. At all times pertinent to this Complaint, the Corporate Defendants operated as organizations which sell and/or market their services and/or goods to customers from throughout the United States and also provide their services for goods sold and transported from across state lines of other states, and the Corporate Defendants obtain and solicit funds from non-Florida sources, accept funds from non-Florida sources, use telephonic transmissions going over state lines to do its business, transmit funds outside the State of Florida, and otherwise regularly engage in interstate commerce, particularly with respect to their employees.

62.     Upon information and belief, the combined annual gross revenue of the Corporate Defendants was at all times material hereto in excess of $500,000 per annum, and/or Williams and those similarly situated, by virtue of working in interstate commerce, otherwise satisfy the Act's requirements.

63.     By reason of the foregoing, the Corporate Defendants are and were, during all times hereafter mentioned, enterprises engaged in commerce or in the production of goods for commerce



as defined in §§ 203(r) and 203(s) of the Act and/or Williams and those similarly situated were and/or are engaged in interstate commerce for the Corporate Defendants. The Corporate Defendants' business activities involve those to which the Act applies.

64.     The Corporate Defendants are convenience stores/food markets, and, through their business activities, affect interstate commerce. Williams's work for the Corporate Defendants likewise affects interstate commerce. Williams was employed by the Corporate Defendants as a cashier and helper for the Corporate Defendants.

65.     While employed by the Corporate Defendants, Williams worked approximately an average of 91 hours per week without being compensated at the rate of not less than one- and one-half times the regular rate at which he was employed. Williams was employed as a cashier and helper, performing the same or similar duties as that of those other similarly situated cashiers and helpers whom Williams observed working in excess of 40 hours per week without overtime compensation.

66.     Williams worked for the Corporate Defendants from approximately 2018 through February of 2022.

67.     In total, Williams worked approximately 150 compensable weeks for the Corporate Defendants under the Act, or 150 compensable weeks if we count 3 years preceding the date of the filing of the instant action.

68.     The Corporate Defendants agreed to pay Welch $12 per hour.

69.     However, the Corporate Defendants did not pay Williams for all of his hours worked and did not pay Williams at the lawful overtime rate for hours worked in excess of 40 per week.



70.     At best, Corporate Defendants paid Williams very irregularly. Corporate Defendants paid Williams some weeks and other weeks they did not pay Williams using the excuse that they "were going to pay later." In all, Corporate Defendants paid Williams close to $2,400 per month on average. These calculations are subject to discovery and are made based on Williams' best efforts to calculate moneys owed to him due to the irregularity in which he received payments from the Corporate Defendants.

71.     Williams seeks to recover unpaid overtime and minimum wages accumulated from the date of hire and/or from 3 (three) years preceding the date of the filing of this Complaint.

72.     Prior to the completion of discovery and to the best of Williams's knowledge, at the time of the filing of this Complaint, Williams's good faith estimate of unpaid overtime and minimum wages is as follows:

UNPAID OVERTIME WAGES

| Year | Formula | Actual Damages | Liquidated Damages | Total Damages |
|------|---------|----------------|--------------------|---------------|
| 2019 | $12 x .5 x 51 x 38 | $11,628 | $11,628 | $23,256 |
| 2020 | $12 x .5 x 51 x 52 | $15,912 | $15,912 | $31,824 |
| 2021 | $12 x .5 x 51 x 52 | $15,912 | $15,912 | $31,824 |
| 2022 | $12 x .5 x 51 x 7 | $2,142 | $2,142 | $4,284 |
| | | | Total | $91,188 plus reasonable attorney's fees and costs of suit. |

UNPAID MINIMUM WAGES

| Year | Formula | Actual Damages | Liquidated Damages | Total Damages |
|------|---------|----------------|--------------------|---------------|



| | | | | |
|---|---|---|---|---|
| 2019 | $8.46 x 91 x 39 = $30,024.54 (what should have been paid)<br><br>$2,400/4 = $600 x 39 = $23,400 (subject to discovery, what may have been paid) | $6,624.54 | $6,624.54 | $13,249.08 |
| 2020 | $8.56 x 91 x 52 = $40,505.92 (what should have been paid)<br><br>$2,400/4 = $600 x 52 = $31,200 (subject to discovery, what may have been paid) | $9,305.92 | $9,305.92 | $18,611.84 |
| 2021 (1/1/21–9/29/21) | $8.65 x 91 x 38 = $29,911.70 (what should have been paid)<br><br>$2,400/4 = $600 x 38 = $22,800 (subject to discovery, what may have been paid) | $7,111.70 | $7,111.70 | $14,223.40 |
| 2021 (9/30/21–12/31/21) | $10 x 91 x 13 = $11,830 (what should have been paid)<br><br>$2,400/4 = $600 x 13 = $7,800 (subject to discovery, what may have been paid) | $4,030 | $4,030 | $8,060 |
| 2022 | $10 x 91 x 7 = $6,370 (what should have been paid)<br><br>$2,400/4 = $600 x 7 = $4,200 (subject to discovery, what may have been paid) | $2,170 | $2,170 | $4,340 |
| | | | **Total** | $58,484.32, plus reasonable attorney's fees and costs of suit. |

73.     At all times material hereto, the Corporate Defendants failed to comply with Title

29 U.S.C. §§ 201-219 and 29 C.F.R. § 516.2 and § 516.4 et seq. in that Williams and those similarly

situated performed services and worked in excess of the maximum hours provided by the Act but



www.saenzanderson.com

no provision was made by the Corporate Defendants to properly pay them at the rate of time and one half for all hours worked in excess of forty hours (40) per workweek as provided in the Act. The additional persons who may become Plaintiffs in this action are weekly-paid employees and/or former employees of the Corporate Defendants who are and who were subject to the unlawful payroll practices and procedures of the Corporate Defendants and were not paid minimum wages, or time and one half of their regular rate of pay for all overtime hours worked in excess of forty.

74.     The Corporate Defendants knew and/or showed reckless disregard for the provisions of the Act concerning the payment of minimum and overtime wages and remain owing Williams and those similarly situated these overtime and minimum wages since the commencement of Williams' and those similarly situated employees' employment with the Corporate Defendants as set forth above, and Williams and those similarly situated are entitled to recover double damages. Corporate Defendants never posted any notice, as required by Federal Law, to inform employees of their federal rights to overtime and minimum wage payments.

75.     Corporate Defendants willfully and intentionally refused to pay Williams overtime and minimum wages as required by the laws of the United States as set forth above and remain owing Williams these overtime and minimum wages since the commencement of Williams' employment with the Corporate Defendants as set forth above.

76.     Williams has retained the law offices of the undersigned attorney to represent him in this action and is obligated to pay a reasonable attorneys' fee.

**<u>PRAYER FOR RELIEF</u>**

**WHEREFORE**, Williams and those similarly situated request that this Honorable Court:

A. Enter judgment for Williams and other similarly situated and against the Corporate



www.saenzanderson.com

Defendants on the basis of the Corporate Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B. Award Williams actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

C. Award Williams an equal amount in double damages/liquidated damages; and

D. Award Williams reasonable attorneys' fees and costs of suit; and

E. Grant such other and further relief as this Court deems equitable and just.

**COUNT IV: WAGE AND HOUR VIOLATION**
**BY THE INDIVIDUAL DEFENDANT (BY ALL PLAINTIFFS)**

77. Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1-74 above as if set out in full herein.

78. At all times material, the Individual Defendant was, and is now, an owner and an officer of each of the Corporate Defendants.

79. Individual Defendant hired and trained each of the Plaintiffs.

80. Individual Defendant terminated the employment of each of the Plaintiffs.

81. At all times material, Individual Defendant closely supervised each of the Plaintiffs.

82. At all times material, Individual Defendant gave Plaintiffs their work schedule and closely monitored how many hours Plaintiffs worked for the Corporate Defendants.

83. At all times material, Individual Defendant paid Plaintiffs. When he did not pay Plaintiffs, it was the Individual Defendant who gave excuses about delays in Plaintiffs' payments.

84. Individual Defendant, during all relevant times, decided how much each of the Plaintiffs were going to get paid and when.

85. The Individual Defendant was an employer of Plaintiffs and others similarly situated within the meaning of Section 3(d) of the Act, in that this defendant acted directly or



indirectly in the interests of the Corporate Defendants in relation to the employees of each of the Corporate Defendants, including Plaintiffs and others similarly situated. The Individual Defendant had operational control of the Corporate Defendants, was involved in the day-to-day functions of the Corporate Defendants, and is jointly liable for Plaintiffs' damages.

86.     The Individual Defendant is and was, at all times relevant, a person in control of the Corporate Defendants' financial affairs and can cause the Corporate Defendants to compensate (or not to compensate) their employees in accordance with the Act.

87.     The Individual Defendant willfully and intentionally caused each of the Plaintiffs not to receive overtime compensation and minimum wages as required by the laws of the United States as set forth above and remains owing each of the Plaintiffs these overtime and minimum wages since the commencement of Plaintiffs' employment with the Corporate Defendants as set forth above.

88.     Plaintiffs have retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs and those similarly situated request that this Honorable Court:

A.  Enter judgment for Plaintiffs and other similarly situated and against the Individual Defendant on the basis of the Defendants' willful violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. and other Federal Regulations; and

B.  Award Plaintiffs actual damages in the amount shown to be due for unpaid wages and overtime compensation for hours worked in excess of forty weekly; and

C.  Award Plaintiffs an equal amount in double damages/liquidated damages; and

D.  Award Plaintiffs reasonable attorneys' fees and costs of suit; and

E.  Grant such other and further relief as this Court deems equitable and just.



www.saenzanderson.com

23

## COUNT V: BREACH OF CONTRACT AGAINST DEFENDANTS FAMILY FOOD OF LIBERTY MARKET INC AND YOUSSEF YAZJI (BY ALL PLAINTIFFS)

89.     Plaintiffs re-adopt each and every factual allegation as stated in paragraphs 1 through 11 above as if set out in full herein.

90.     The Individual Defendant offered Monther $15 per hour for each hour worked as a cashier and helper for the benefit of the Defendants FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc. and YOUSSEF YAZJI. Monther accepted the offer.

91.     The Individual Defendant offered Welch $12 per hour for each hour worked as a cashier and helper for the benefit of the Defendants FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc. and YOUSSEF YAZJI. Welch accepted the offer.

92.     The Individual Defendant offered Williams $12 per hour for each hour worked as a cashier and helper for the benefit of the Defendants FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc. and YOUSSEF YAZJI. Williams accepted the offer.

93.     Defendants FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc. and YOUSSEF YAZJI entered into an employment agreement with each of the Plaintiffs.

94.     Plaintiffs fulfilled their end of the employment agreement.

95.     Defendants FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc. and YOUSSEF YAZJI breached the agreement and did not pay Plaintiffs for each of their hours worked at the agreed upon rate.

96.     As a result, Plaintiffs have been damaged.



www.saenzanderson.com

97.     Plaintiffs have retained the law offices of the undersigned attorney to represent them in this action and are obligated to pay a reasonable attorneys' fee.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants FAMILY FOOD OF LIBERTY MARKET INC f/k/a Liberty Market of Miami Inc. and YOUSSEF YAZJI for the following:

a.  Unpaid wages found to be due and owing;

b.  Prejudgment interest;

c.  Reasonable attorneys' fees and costs; and

d.  Such other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiffs, and those similarly situated, demand trial by jury of all issues so triable as of right.

Dated: April 26, 2022.                    Respectfully submitted,

By:   **/s/ Aron Smukler**
Aron Smukler, Esquire
Fla. Bar No.: 297779
Email: asmukler@saenzanderson.com
R. Martin Saenz, Esquire
Fla. Bar No.: 0640166
Email: msaenz@saenzanderson.com

SAENZ & ANDERSON, PLLC
20900 NE 30th Avenue, Ste. 800
Aventura, Florida 33180
Telephone: (305) 503-5131
Facsimile: (888) 270-5549
*Counsel for Plaintiffs*



www.saenzanderson.com